Good morning. Anna Rose Madison, on behalf of the petitioner that mottled and veiled Suradi, I'd like to give you reserved three minutes for a moment. In 2011, this court found that Ms. Suradi had presented evidence she was likely to be killed if she was returned to Jordan. This court also found that she had presented evidence that Jordanian officials are willfully blind to, if not supportive of, on her killing decision. The issue on remand before the P.I.A. was simple and straightforward under the terms of this court's mandate. But the P.I.A. repeated the same errors and ignored the same evidence as it had the first time. When considered as a whole, the substantial evidence in the record entails a finding that government officials in Jordan acquiesced in on her killing decision. So you just mentioned the prior case. I just wanted to clarify and make sure we're all on the same page when issues or questions of this appeal are controlled by the previous Suradi panel decision. So the previous panel decision found that she would be likely to be tortured if returned. That issue is off the table. The government is not arguing it. So the issue before the panel here is whether she has shown that the Jordanian government would acquiesce to this torture. So the prior panel opinion looked at the evidence and found that the P.I.A. had not, that the P.I.A.'s finding that Jordanian government officials would not acquiesce was not supported by substantial evidence. And the court gave the P.I.A. specific instructions to weigh the evidence as a whole. But as the prior panel opinion noted, the P.I.A. had ignored a number of relevant pieces of evidence, including the testimony of Ms. Suradi and her brother, even though that was critical. And so I've sent it back with instructions to do that. So the P.I.A. had a chance to do a fresh look at that issue, consider all the evidence in the record. But once again, it made the same mistakes. So first, it, despite demanding instructions from this court, it failed to address in a way all the evidence, including the credible testimony of Ms. Suradi and her brother. It again misread the country reports. In some interesting ways, cherry-picking facts and failing to address all the evidence. And the third point is really the consequence of those first two. Because the remand instructions were clear, and because the P.I.A. did get the law right, and just misapplied the facts, there is no need for this court to remand yet again. This court can simply direct entry into what you say they ignored, because what's the most compelling evidence that you think that they ignored that's, you know, was positive, I guess, in your view? Absolutely. So the credible testimony of Ms. Suradi and her brother, the court never mentioned either the immigration judge or the P.I.A. so much as they mentioned this. And, in fact, even though the prior mandate said the court must consider this evidence, and the court responded in error for it not to this time, the P.I.A. opinion actually goes to some length to say, to just discuss the documentary evidence. The immigration judge considered the documentary evidence. It considered the country reports. Despite the fact that not only were there the truths in this mandate, but we filed a 26-page brief explaining why the court must consider all of this credible testimony. And so Ms. Suradi's testimony was that she had actually gone to local officials for related issues and was told by both local police and the mayor that there was nothing they would do to interfere with issues of tradition, and had the right to control both female family members otherwise, and that the police would simply not get involved. So, essentially, in this case, not only do we have the country reports and the documentary evidence that, as a whole, shows that the Jordanian government does acquiesce in this, but we have specific testimony, credible testimony, that confirms the local officials are on the same page as what all of the State Department reports, the Human Rights Watch reports, and the other documentary evidence suggests, that is, they will not do anything to stop it. She is potentially going to be the victim of an honor crime, which, as this court has already found, she would need to return to. Okay. You were asking if those conditions are an issue similar to the last case, and guess what? How do we deal with the most updated and ensure that we are getting the most updated information regarding those conditions? Right, well, in this case, the VIA, on remand, the VIA did send it back to the Immigration Pledge to essentially reopen the record and put in additional evidence. We think that was error in this case. It was a procedural error. The VIA has specific regulations for when you should send things back and reopen the record. They entirely feel the ultimate in this case, so their regulations, if they're sent back brief, say the party requesting to put in additional evidence, has to put their motion-specific facts that they intend to prove are commercial or changed in an affidavit. The government did none of that, but the VIA essentially helped allow them to go back and put in additional evidence anyways. So it's my first procedural point. The government, the VIA, should be able to play fast and loose with its own regulations. On the other hand, our memorandum disposition sort of confided that. Don't you think? Well, I think... In our case, I mean, it says, fully considered that we're made of the VIA, to consider following the record, it reports that above, and the record as a whole. Right, and there was a record as a whole. There was over 400 pages of evidence in the record. But that is as it states in the case, it says we're made of the VIA for further fact-finding as appropriate. Right, and so the point isn't that the VIA wouldn't have had power necessarily in the proper procedural motions to do that, but that the VIA does have regulations for how a party is supposed to seek that additional fact-finding. It didn't follow those. It wasn't proper. But regardless, if you think, considering all of the evidence, that it was added on on remand before the immigration judge, the record as a whole says essentially nothing has changed, that the Jordanian government still has laws on the books that essentially increase honor killings, Well, there's still, so when was the record of immigration traditions established? Oh, sorry, back in 2010. Yeah, it was 2012. 2012 was the hearing before the immigration judge. So if you're saying 2011, it's the latest State Department report. Okay, does that continue for every region of the United States? Is that the State Department data shows since 2017? As of 2017, so that is it. And, like, the prior case where we're asking for the record to be reopened, that's the current conditions aren't an issue here. I don't think the government's even arguing there should be a third step back between when the record began. The question is here is what, based on the record, was it in fact reopened? And evidence usually told is quite frequent in immigration cases. Sorry, is this something of delay? Based on all the evidence in the record, as of now, the Jordanian government has not done any sort of meaningful penal code reform. It still essentially encourages male members to give them the power to put their female relatives in indefinite detention, essentially jailed them for as long as they want to keep doing this again. And that they are not a cease-and-stop discourse. Mr. Roddy would like to be the subject as soon as he's returned to the country. He's now reserved for a meeting. Thank you. Good morning, and good afternoon, Attorney General. Before getting to the merits of the petition, I just want to briefly touch on the jurisdiction. The government is aware of this Court's decision, saying that there's an all-the-merits exception to withholding and deferral claims under the Convention Against Torture. But we would just urge the Court to address their jurisdiction in this decision, in this case, because the criminality law clearly applies. You can see in removability as an aggravated felon. So the government's position is that withholding of removal and deferral of removal should be outside the scope of this Court's jurisdiction because these are findings of fact. Additionally, the Board's decision on remanding the case back to the immigration judge set a follow-up in interest, if required to. But moving on to the merits, I'll start with the Board's decision remanding it for the fact-finding. I think, Chief Judge. I'm wondering if maybe you could just start with, though, when the PIA gave sufficient consideration to Ms. Varady's testimony and the testimony of her brother when considering government acquiescence. Yes, Judge. The testimony is, as this Court has known, really quite relevant to determining whether things were likely that a girlfriend is due to acquiesce in torture. This Court was made confident objective evidence, and this was necessary when determining whether a girlfriend is going to acquiesce. So we need country-conditioned evidence, and that's why the Board relies on federal legal evidence. And is it just strictly the right? Is there any other evidence? Do you think there's no other evidence that's relevant, and you just focus completely, strictly on the country reports? Correct. And I could further argue that Varady's testimony wasn't necessarily relevant. Well, isn't the testimony reflect what she asserts was truly happening on the ground? Back in 1994, she came to the United States in 1994, so when she says she approached a mayor of Oman, that happened prior to 1994, so what happened in pre-1994 is certainly going to be different than what's going on two decades later in Jordan. So it was her work to show through objective evidence that it's here that the record compels it's more likely than none if she returns to Jordan and expresses a fear that her family is going to kill her, that Jordan is just going to do nothing, and nothing in the record supports that, plus nothing compels it. What do we do with our prior advisor to decision, though, on this? Because it's a record of what does he control? Does it show, for instance, that Ms. Varady will be more likely than not be tortured? What's your take on what the prior panel did? I would argue that what the prior panel did was looked at the record before it and decided that based on that record, it was more likely than not she would be tortured, well, more likely than not she would be killed, but didn't meet the legal definition of torture. I would argue that when the board sent it back to the immigration judge for further fact-finding, for further additional documents, that that created a new record, but the board did not address that, assuming that they just assumed that all they had addressed was the acquiescence part, because nowhere in their decision do they say, how are we going to address the more likely than not she's going to be harmed. As a fair reading of the prior opinion, the panel was only remanding for a question of whether the government was an acquiescer. Wouldn't you agree? Yes, I think that's a fair reading of it. But looking at the overall structure of deferral of removal, it's a temporary pretension from removal, and there's three procedures to terminate it. So at any time, the government can file a motion that doesn't have to meet the regulations. It just has to submit evidence relevant to the likelihood of torture. You're agreeing to remand to the immigration judge. Is that correct or not? No, not in this case, Judge Bilson. I would agree that what the board did with the Ninth Circuit, when this board remanded it the first time, that it was proper to remand it to the immigration judge. Would you agree that, absent our direction, that the procedures that the board usually uses were not followed in terms of the remand? No, because it was not dealing with a motion to reopen or a motion to remand in the normal context. It was dealing with a mandate from this board, and it needed to decide what's due to that mandate. It's not even clear from 30 years regaining to the immigration judge whether she's been granted a government's motion. It just says, we will remand it for further objecting country conditions. And the regulations provide that the board may do that at any time on its own motion without regard to the procedural requirements the board has. I agree absolutely with this question. But the prior appeal didn't direct the board to remand it to the immigration judge. Did the board do that? Well, the prior appeal didn't direct the board to remand it. The prior appeal said, rather than fact-finding in the first instance, we're going to remand it to the board, and they sent it in case where a further fact-finding was needed. But the board, by regulation, cannot fact-find it. Correct. So it had to send it back to the immigration judge. To either make further findings based on the current record or to re-update it with current country conditions, which is particularly important, as I noted earlier. What evidence, in your view, in the record, will strongly attest to show that Jordan does not agree with some of her appeal points? The fact that, interestingly, the court expressed that they will be killed in another crime or placed into protective custody of sorts. It does amount to jail, but there's no argument that that process is torture. The case for his health before the indefinite detention is not torture in and of itself. And there has been progress. Initially, when they had this thing called an administrative detention, these women who expressed fear from another family, from their family members, were placed into a jail. But the King and Queen of Jordan, working with NGOs, set up shelters run by the NGOs, I think the record shows, where these women that were previously in administrative detention or jail were sent to shelters, I think they call them, with deep shelters. So they are trying to ameliorate the harshness of their protection, but the fact is they're not reaching the legal obligation to step in and stop the other killings. Well, I'm getting exactly the opposite of what I thought. I guess the 2011 national report that was submitted by the government, I believe, noted that Jordan continued to have human rights problems reflected in violence against women. It seems like a broad range of sources agree that there are a double-digit number of murder killings every year in Jordan, and the number reported is likely less than the number actually committed. And honestly, I guess I'm just trying to sit down for a few hours and see if that supports that the situation is improving over time. I wouldn't say necessarily that the situation is improving. Any other murder killing is unfortunate. Why is that? Can you do better? You just said that. That's why. I'm saying that the type of protection that Jordan is giving to women who express a fear of being killed has improved over time. So, previously, your argument is that they're not in a courthouse because they're putting them in jail. Correct. They're putting them in jail. That's sort of an odd argument, right? Well, what used to be a jail is now a shelter run by NGOs. It says that in the record. In the record. What's that? So, like, back when the record was created, that the shelters existed, that's a representation that you're making. You just didn't want to have them. No, Judge Bell, that is in the record that was introduced on remand. So, when they updated evidence to these country conditions, and here I'm looking at the record around 1999, and there it shows that they had this system of protective custody, which was jail, as Chief Judge Shulman said. But the Ministry of Interior, at the urging of the King and Queen and the NGOs, reviewed all of these protective custody cases, and that's when they worked to create these shelters for women until they were no longer fearful of returning to their families. Wow. But I just talked to you about the double digit numbers, and a lot of them are going unreported. Or, you know, by the numbers reported, it's probably less than what's happening. It seems like the government is aware of what's happening. It's just saying that they've been saying, well, there's nothing you can do about it. Well, the government certainly can prevent every crime. Well, but awareness of torture without taking action to prevent torture can be sufficient to constitute acquiescence. And so we said that in saying versus action. And for me, struggling with how, based on what I read in the record, seemed as a good straw. Well, I would point to the more current decision, which was a domestic violence torture claim from Guatemala, and there a woman reported that she was raped in the police or didn't do anything. But the court said the proper inquiry is twofold. First, is it more likely than not a person's willing to be harmed? But then the acquiescence part, you need to look at, does the government, in question, are they aware of this specific harm? Or are they more conscious than closing their eyes to what's going on? At least that's what was said in her office, Romero, when we were citing Garcia and Lujan. So what's your response to that? Well, that the court would need to find evidence in the record that compels the conclusion that if they knew, if Ms. Zarate goes to Jordan and says, I'm fearful of being killed, that the Jordanian government's not going to put her into the protected custody, as the record shows that they do with women who express this fear of harm. Well, and the second component to what you were talking about, I mean, being Garcia is a breach of their responsibility to intervene to prevent the activity because they are unable or unwilling to oppose it. So it just seems like there's... Right, and if there was record evidence to show that these 25 unfortunate crimes were reported, so they were aware that these were going on, but they've raised their legal responsibility to jump in and stop it, but there's just no evidence to compel that conclusion from this record. Do you see my time is up? So there's no further questions. Thank you. Thank you. Thank you. So first of all, I'm not going to touch on jurisdiction that this court wants, but morality is still a bit of a law on the circuit. We have one court to address with an ultimato, so I think we're fine moving on. So that's your question. I just want to go quickly to health protection. Should a sorority's conviction have any effect on our consideration of her application? No, it does not. So that is not a requirement. The other asylum claims, they're the ones that are based on that, but that is not a consideration here. She has shown that there is ugliness here. So the government's point to conduct a custody is kind of its strongest point, acknowledging that the conditions are improving over time, although the custody might be getting a little bit better. The immigration judge said the number had dropped with these new shelters going to 2007 numbers. The State Department reported the government. It's also been at page 245 of the record. It says that this number was back up to 82 and being placed in the protective custody as of 2011. And as this court and the sargent court said, it's much closer to persecution protection from harm. And in any event, the record 298 shows that that program brought about no perceptible decrease in the incidence of so-called honor crimes. So that's the sargent case. Exactly. It's the sargent case that essentially looked at extremely similar evidence here and found that the Georgian government is ineffective when it comes to providing protection for women, and it considered the new special tribunals as well that they considered. Thank you very much. Thank you, counsel. Thank you for your pro bono representation. Thank you, judge. Thank you both. We are going to end the advocation. Sir, you may submit for decision.
judges: Thomas, Murguia, Baylson